IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

BLF LAND, LLC and BLAINE LARSEN
FARMS, INC.,

      Plaintiffs,

v.

ALLEN FRERICH *et al.*,

      Defendants.

2:23-CV-133-Z

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Rule 12(b)(6) Motion to Dismiss Plaintiffs' First Amended Complaint ("MTD") (ECF No. 20), filed October 24, 2023. For the reasons discussed below, it is **GRANTED IN PART** only as to Plaintiffs' claims against the directors in their official capacities.

### BACKGROUND

This case concerns a regulation dispute over Plaintiffs' groundwater production for their potato-growing business. Defendant North Plains Groundwater Conservation District's ("NPGCD") Rules "require landowners to 'balkanize' their contiguous acreage into 'Groundwater Production Units' (GPUs)." ECF No. 39 at 2. A GPU, put simply, is how NPGCD subdivides property for purposes of regulating groundwater production. And under this scheme, the Rules "fix[] [groundwater] withdrawals at one and one-half acre-feet per acre." ECF No. 20 at 2.

Plaintiffs requested a variance from certain rules for alleged overproduction on certain GPUs, which NPGCD's Board Order No. 023-001 ("Order") denied on January 20, 2023. ECF No. 39 at 3. On July 27, 2023, NPGCD demanded a $500,000 payment to resolve the alleged rule violations. *Id.* Plaintiffs then sued under the Equal Protection, Due Process, and Takings Clauses.

LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he well-pleaded allegations of a complaint must be taken as true and viewed in the light most favorable to the plaintiff." *George v. SI Group, Inc.*, 36 F.4th 611, 619 (5th Cir. 2022).

ANALYSIS

I.      Plaintiffs' claims are timely.

The Texas personal injury statute of limitations — two years — governs all Section 1983 claims raised in Texas. *Piotrowski v. City of Houston*, 51 F.3d 512, 515 n.5 (5th Cir. 1995); *Owens v. Okure*, 488 U.S. 235, 249–50 (1989); TEX. CIV. PRAC. & REM. CODE Section 16.003(a). And takings claims under the Texas Constitution are "governed by the ten-year limitations period to acquire land by adverse possession." *Tucker v. City of Corpus Christi*, 622 S.W.3d 404, 408 (Tex. App.—Corpus Christi-Edinburg 2020, pet. denied) (citations omitted); TEX. CIV. PRAC. & REM. CODE Section 16.026.

NPGCD argues that Plaintiffs' Section 1983 and takings claims are time-barred because Plaintiffs purchased their land in 2011. ECF No. 21 at 13–16. Plaintiffs' claims, per NPGCD, became ripe at that time because "NPGCD's Rules on Withdrawals and Pooling . . . were adopted January 2009, and were in effect and applicable to BLF when it first purchased property at issue in this suit in 2011." *Id.* at 14. NPGCD thus concludes that Plaintiffs' Section 1983 and takings claims were barred in 2013 and 2021, respectively. *Id.* at 14–15.

Plaintiffs respond that their earliest accrual date is January 20, 2023, the date when NPGCD released the Order denying their variance request. ECF No. 39 at 6. Plaintiffs rely on this date

2

because it is the application of NPGCD's rules, not their enactment, that gives rise to their claims. *Id.* at 5; *Stratta v. Roe*, No. 6:18-CV-00114-ADA, 2021 WL 1199634, at *4 (W.D. Tex. 2021); *see Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985), *overruled on other grounds by Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019) (requiring a final decision over regulatory applications before a plaintiff may bring a regulatory takings claim).

Plaintiffs are correct because NPGCD's final decision over its regulatory applications occurred January 20, 2023. NPGCD's reasoning would fix every final administrative decision to the moment a property owner becomes subject to its Rules, obviating any need for subsequent administrative variance requests or application decisions. No authority supports the foregoing construal of the final decision rule, and all authorities *supra* point directly against it. *See Stratta*, 2021 WL 1199634 at *5 ("The District denied Fazzino's application for increased production to offset the City of Bryan's production on September 6, 2017 . . . . The limitations period would thus expire on September 6, 2019.").

NPGCD further argues that Plaintiffs failed to allege separate acts under their equal protection claim. ECF No. 42 at 5–7 (citing *Perez v. Laredo Junior College*, 706 F.2d 731, 733–34 (5th Cir. 1983) for the proposition that equal protection claims accrue when the same alleged violation was committed at the time of each act). This reasoning is inapposite because Plaintiffs rely on the "single act" accrual metric. *See* ECF No. 39 at 7 (claiming that Plaintiffs' "equal protection claim is grounded in the [NPGCD] board's enforcement of GPU rules against Larsen by way of denying an exception to the GPU limitations and by imposing a fine . . . . The enforcement of those Rules . . . did not become certain until, at the earliest January 20, 2023 . . . ."). Plaintiffs' equal protection claim may therefore proceed.

And so may Plaintiffs' declaratory judgment claim. Claims for declaratory relief necessarily derive from claims for substantive relief and so are governed by the statute of limitations applicable to the underlying substantive claims. *Petro Harvester Operating Co., LLC v. Keith*, 954 F.3d 686, 699 (5th Cir. 2020). Because Plaintiffs' underlying substantive claims are not time-barred, their declaratory judgment act claim may also proceed.

## II.     Plaintiffs adequately stated takings claims.

A taking in violation of the Fifth Amendment is either physical (*per se*) or regulatory. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 321 (2002); *see Edwards Aquifer Auth. v. Day*, 369 S.W.3d 814, 838 (Tex. 2012) (instructing Texas courts to look to federal jurisprudence for takings analysis). Government action that physically appropriates property is no less a physical taking because it arises from regulation. *See Horne v. Dep't of Agriculture*, 576 U.S. 350, 361 (2015) (finding a physical rather than regulatory taking where administrative reserve requirement compelled raisin growers to physically set aside a percentage of their crop for the government).

NPGCD argues Plaintiffs failed to state a valid takings claim because they alleged neither unreasonable interference with their land nor the loss of all economically viable land use. ECF No. 21 at 18–19. NPGCD concentrates on the *Penn Central* factors, which govern regulatory takings. *Penn Central Transp. Co. v. N.Y.C.*, 438 U.S. 104 (1978); *see Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 933–34 (Tex. 1998) (employing a similar analysis for Texas taking violations).

Plaintiffs respond that they alleged "a *per se* as well as a regulatory taking." ECF No. 39 at 9; *see* ECF No. 17 at 12 ("NPGCD has effected an uncompensated taking of Larsen's right to groundwater by denying Larsen its fair chance to recover the groundwater under its land and thereby prevent confiscation of its property."). They argue that their allegations are like the taking

4

in *Stratta v. Roe*, where the plaintiff stated a valid takings claim against a groundwater conservation district based on the denial of a production limit. 961 F.3d 340, 359–60 (5th Cir. 2020). And in the alternative, Plaintiffs argue they stated a regulatory taking under the *Penn Central* factors. ECF No. 39 at 10.

Plaintiffs, at a minimum, stated a valid *per se* takings claim. NPGCD does not sufficiently address whether Plaintiffs adequately stated a valid *per se* takings claim, instead repeating that they did not satisfy certain *Penn Central* factors for purposes of a regulatory taking. ECF No. 42 at 7–8. NPGCD urges this Court to apply the Supreme Court's standard for regulatory takings, requiring Plaintiffs to "plead and prove that the Rules have deprived its property of all economically beneficial use." *Id.* at 7 (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992)). But "*Lucas* . . . was about regulatory takings, not direct appropriations." *Horne*, 576 U.S. at 361. Plaintiffs pled direct appropriations and have sufficiently analogized their case to *Stratta*, where similar takings allegations survived the pleading stage. ECF No. 39 at 9. Plaintiffs' takings claims, therefore, may proceed.

### III.    Plaintiffs adequately stated a due process claim.

Government actions not rationally related to a legitimate interest are void. *Yur-Mar, LLC v. Jefferson Parish Council*, 451 Fed. Appx. 397, 401 (5th Cir. 2011). To prevail on a substantive due process claim, a plaintiff must first show that "it held a constitutionally protected property right to which the Fourteenth Amendment's due process protection applies." *Simi Inv. Co. v. Harris Co.*, 236 F.3d 240, 249–50 (5th Cir. 2000). A land-owning plaintiff states a substantive due process claim where it alleges that "the decision limiting the intended land use was arbitrary and capricious." *Id.* at 248 (quotation marks and citation omitted).

5

NPGCD does not contest that Plaintiffs have a protected property interest in the groundwater, instead arguing that "BLF has not and cannot plead that . . . NPGCD arbitrarily and irrationally infringed on BLF's rights to groundwater" because it "acted within its statutory authority." ECF No. 21 at 22. There is also no question that Plaintiffs pled that NPGCD's actions arbitrarily and capriciously infringed in their groundwater rights. *See, e.g.*, ECF No. 17 at 15–16. The only outstanding question before the Court is whether the substance of Plaintiffs' allegations should survive this pleading stage.

Plaintiffs argue it should because the Order did not state any basis for denying Larsen's application. ECF No. 17 at 16. Pages 1 through 3 recite the administrative history of Plaintiffs' variance application but do not address the evidence presented at the hearing. *Id.* Pages 3 through 7 reproduce statutes and rules without any further analysis, and Page 7 summarizes what NPGCD's board considered before denying the application. *Id.* As Plaintiffs alleged, "the NPGCD Board could have denied Larsen's Application because Board harbors personal animus against Mr. Larsen, [or] because the Board wanted to impose extra costs on Larsen's operations for the benefit of small, local landowners." *Id.*

But Plaintiffs, per NPGCD, "conflate[] the *articulation* of a rational basis on the face of the denial with the *existence* of a rational basis between the denial and the District's interest in preserving the Aquifer." ECF No. 42 at 8 (emphasis original); *see Yur-Mar*, 451 Fed. Appx. at 401 (analyzing the rational basis of the regulation itself, not of any subsequent orders). And here, NPGCD's Rules are targeted to "help preserve water resources within its borders" and are based on a "reasonable threshold for management that limits the impacts of landowners who are likely to have outsized impacts on the Aquifer and the property interests of surrounding landowners." ECF No. 21 at 22.

6

But Plaintiffs contest the rational relationship between NPGCD's stated interest and its Order denying their variance request. This is analogous to *Simi*, where the Fifth Circuit never assessed the county's authority to deny street access to plaintiff; it instead assessed whether the county's denial bore any rational relationship to its ostensible interests. *Simi*, 236 F.3d at 251. Here, neither the Order nor NPGCD's briefing explains the rational relationship between the denial and NPGCD's legitimate interests stated *supra*. If NPGCD enforces its Rules unevenly or never grants the exceptions it makes available under Rule 11.2, Plaintiffs argue, the Rules themselves might be arbitrary and capricious. And that is all Plaintiffs must demonstrate at this stage. Plaintiffs' due process claim, therefore, may proceed.

### IV.    Plaintiffs' official capacity claims are dismissed.

"Suits against state officials in their official capacity . . . should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). An official capacity suit is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Official-capacity claims become redundant when the appropriate governmental entity is also named as a defendant. *Brown v. City of Houston*, No. H-17-1749, 2019 WL 7037391, at *3 (S.D. Tex. Dec. 20, 2019) (mem. op.) (citing *Marceaux v. Lafayette City – Parish Consol. Gov't*, 614 F. Appx. 705, 706 (5th Cir. 2015) (per curiam)) (affirming dismissal of official capacity claims against municipal officers as redundant of claims against the municipality).

"Even if BLF has properly asserted claims against the individual directors in their official capacities, those claims should still be dismissed as duplicative and redundant of the claims against the District . . . ." ECF No. 21 at 20. Plaintiffs do not contest dismissal. Neither does this Court.

**CONCLUSION**

For the foregoing reasons, this Court **GRANTS** the MTD **IN PART**, only as to Plaintiffs'

official capacity claims against the officers. Hence these claims are **DISMISSED** with prejudice.

**SO ORDERED**.

March _14_, 2024.

_____

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

8