IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

BLF LAND, LLC and BLAINE LARSEN
FARMS, INC.,

      Plaintiffs,

v.                                                                  2:23-CV-133-Z

NORTH PLAINS GROUNDWATER
CONSERVATION DISTRICT,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Protective Order ("Motion") (ECF No. 45), filed March 25, 2024. For the reasons discussed *infra*, it is **GRANTED IN PART**.

### BACKGROUND

This case concerns a regulation dispute over Plaintiffs' groundwater production for their potato-growing business. Defendant North Plains Groundwater Conservation District ("District") is a groundwater conservation district that exists pursuant to Article XVI, Section 59 of the Texas Constitution, and is subject to Chapter 36 of the Texas Water Code. The Water Code authorizes the District, *inter alia*, to develop a comprehensive management plan for aquifers within its jurisdiction and to adopt and enforce its rules. TEX. WATER CODE §§ 36.101, 36.102, 36.1071. The board of directors is "responsible for the management of all the affairs of the district." *Id.* § 36.057; *see id.* § 36.051 (affording governing authority to the board of directors). Relevant here are the board's rules establishing and governing Groundwater Production Units ("GPUs").[1]

---

[1] https://northplainsgcd.org/aquifer-management-rules/

Plaintiffs requested a variance from certain rules for alleged overproduction on certain GPUs, which the District's Board Order No. 023-001 denied on January 20, 2023. ECF Nos. 17 at 15–16; 39 at 3. Plaintiffs allege that the directors, in denying their variance request, "acted out of animus" because of "an unwritten policy to deny all variance applications." ECF No. 46 at 3.

Enter the District's instant Motion. Plaintiffs served notices of deposition on the District's directors, ECF No. 45-1, but the District seeks a protective order under Federal Rule of Civil Procedure 26(c) to "prevent [these] depositions . . . or, in the alternative . . . prevent[] inquiry on the Directors' mental processes, reasoning, and rationales related to the District's rules, their adoption, permitting decisions, and decision to deny [Plaintiffs] a variance," ECF No. 45 at 7.

### LEGAL STANDARD

Upon party motion and "for good cause," federal courts may issue an order protecting persons from "inquiry into certain matters, or limiting the scope of . . . discovery to certain matters." FED. R. CIV. P. 26(c)(1)(D); *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). The Court has broad discretion to issue protective orders. *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985). That is because "[t]he trial court is in the best position to weigh fairly the competing needs and interests of the parties affected by discovery." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

### ANALYSIS

The District argues that the *Morgan* doctrine and legislative immunity shield its directors from deposition entirely or, at a minimum, limit the scope of their depositions. ECF No. 45 at 3; *United States v. Morgan*, 313 U.S. 409 (1941). The Court will address each argument in turn.

2

## I.     The *Morgan* doctrine does not cloak directors with testimonial privilege.

*Morgan* instructs that a party cannot obtain testimony from a high-ranking government official without showing extraordinary circumstances. *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (citations omitted); *Morgan*, 313 U.S. at 421–22. While neither the United States Supreme Court nor the Fifth Circuit have defined who is senior enough for testimonial privilege, courts have found that heads of government or heads of a government department qualify. *See, e.g.*, *Morgan*, 313 U.S. at 421–22 (federal cabinet secretaries); *Maney v. Oregon*, No. 6:20-cv-00570-SB, 2023 WL 3866761, at **4–5 (D. Or. June 7, 2023) (state governors); *In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023) (state attorneys general).

This Court is unaware of any authority extending *Morgan* protection to county-level officials. *See* ECF No. 45 at 4 (citing only *Morgan* to justify shielding the directors with testimonial privilege). For that reason, and because no logic inherent to *Morgan* or its progeny suggests that county-level officials deserve protections similar to those provided for apex officials, the *Morgan* analysis ends here. The doctrine, accordingly, affords no protection to the directors.

## II.     Legislative immunity shields the directors' rulemaking decisions, but not their decision to deny Plaintiffs a variance request.

In the alternative, the District argues that its directors are cloaked with the testimonial privilege inherent to legislative immunity. ECF No. 45 at 4–6. Because the District is "vested with the full range of governmental powers" under the Texas Constitution, ECF No. 45 at 5, and because the directors "were clearly engaged in a discretionary policymaking decision with generalized application when determining what Rules to adopt," *id.* at 6, the District argues that its directors should enjoy the testimonial privilege offered to both federal and state legislators.

3

### A.   Legislative immunity cloaks legislators with testimonial privilege when performing legislative functions.

The doctrine of legislative immunity recognizes that individuals acting in a legislative capacity are immune from liability. *Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998). Legislative immunity derives largely from the Speech and Debate Clause of the United States Constitution. That clause provides: "for any Speech or Debate in either House, [members of Congress] shall not be questioned in any other place." U.S. Const., art. I, § 6. Courts have reasoned that this kind of immunity encourages the democratic process, *Bogan*, 523 U.S. at 52, serves the public, *Tenney v. Brandhove*, 341 U.S. 367, 373–74 (1951), and serves separation-of-powers functions, *Bogan*, 523 U.S. at 55 (stating that it is "not consonant with our scheme of government for a court to inquire into the motives of legislators.") (quoting *Tenney*, 341 U.S. at 377).

Legislative immunity shields legislators from both liability *and* subjection to testimony. *See Gravel v. United States*, 408 U.S. 606, 615–16 (1972) (holding that senator could not be made to answer questions about events that occurred in senate subcommittee meeting); *Dombrowski v. Eastland*, 387 U.S. 82, 85 (1967) (noting that legislators "should be protected not only from the consequences of litigation's results but also from the burden of defending themselves"); *Schlitz v. Virginia*, 854 F.2d 43, 46 (4th Cir. 1988) (holding that legislator could not be required to testify about matters of legislative conduct), *overruled on other grounds* in *Berkley v. Common Council of City of Charleston*, 63 F.3d 295, 303 (4th Cir. 1995); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 529 (9th Cir. 1983) (holding that former congressman could not be required to testify about his legislative activities); *see also Clear Lake City Water Auth. v. Salazar*, 781 S.W.2d 347, 349–50 (Tex. App. — Houston [14th Dist.] 1989, orig. proceeding) (holding that members of water authority could not be questioned about legislative activities).

4

## B. The directors are "legislators" for purposes of testimonial privilege.

Courts have extended legislative immunity beyond federal and state legislators to other individuals performing legitimate legislative functions. *See, e.g.*, *Supreme Court of Va. v. Consumers Union of the United States*, 446 U.S. 719, 734 (1980) (applying legislative immunity doctrine to state supreme court and its chief justice for promulgating code of professional responsibility); *Clear Lake City Water Auth.*, 781 S.W.2d at 349–50 (applying legislative immunity doctrine to local water authority). The directors fall under this umbrella.

### 1. The directors are legislators.

There is little question that the directors are legislators for purposes of testimonial privilege. The District is a "conservation . . . district . . . which . . . shall be governmental agencies and bodies politic and corporate with such powers of government and with the authority to exercise such rights, privileges and functions . . . as may be conferred by law." Tex. Const. art. XVI, § 59(b). And the Texas Water Code confers authority on the District to promulgate the disputed rules of this case. TEX. WATER CODE §§ 36.101, 36.102, 36.1071. The board of directors is specifically "responsible for the management of all the affairs of the district." *Id.* § 36.057. Because "[w]ater quality regulation is a legislative power," *FM Properties Operating v. City of Austin*, 22 S.W.3d 868 (Tex. 2000), the directors who exercise that power are legislators for purposes of testimonial privilege, *Clear Lake City Water Auth.*, 781 S.W.2d at 350 (holding that "an immunity attaches to [city water authority officials]" exercising legislative power under article XVI, Section 59 of the Texas Constitution).

5

### 2.    The District may assert testimonial privilege for the directors.

Plaintiffs, however, aver that no privilege applies because the District, and not the directors themselves, raised it. ECF No. 46 at 6 (citing *Fazzino v. Roe*, No. 6:18-cv-00114-ADA-JCM, 2020 WL 13228700, at *3 (W.D. Tex. Nov. 16, 2020) ("The fact that Brien has not personally invoked the privilege is sufficient to end the discussion.")). This claim is dubious.

*Roe*, as an initial matter, is inapposite because the District's directors, unlike *Roe*, were originally parties to this case. *See* ECF No. 17 at 2–3 (asserting official capacity claims against the directors); *see also Roe*, 2020 WL 13228700, at *3 ("Brien is not a party to this lawsuit but is instead the subject of a deposition notice in this matter."). And they remained so until the Court dismissed them as parties under Federal Rule of Civil Procedure 12(b)(6). ECF No. 43 at 7. Yet under Plaintiffs' reasoning, the directors should have stayed in this lawsuit solely to raise the testimonial privilege. The law requires no such procedural oddity.

Indeed, *Roe*'s authorities are silent on whether a governing body, run by the legislators claiming privilege, lacks standing to assert the privilege on their behalf. They provide only that "[a] legislator cannot assert or waive the privilege on behalf of another legislator." *Perez v. Perry*, No. SA-11-CV-360-OLG-JES, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) (citing *A Helping Hand, LLC v. Baltimore Cnty., Md.*, 295 F. Supp. 2d 585, 590 (D. Md. 2003)).

The District — not another legislator — asserts the privilege here. That distinction is significant because the directors are "responsible for the management of all the affairs of the district." Tex. Water Code §§ 36.057. Unlike one individual asserting the privilege on behalf of another, *Perez*, 2014 WL 106927, at *2, the directors here assert the privilege by and through the District, whose affairs they directly manage. Hence, to the extent the directors are subject to the "personal" privilege requirement — the Fifth Circuit is silent here — their assertion through the

6

District should satisfy. *Accord Cunningham v. Chapel Hill, ISD*, 438 F. Supp. 2d 718, 723 (E.D. Tex. 2006) (holding that school board may assert the privilege on behalf of its trustees, who were not parties to the suit); *see also Schlitz*, 854 F.2d at 46 (holding that plaintiffs could not circumvent legislative immunity by refusing to sue the individual legislators, the court reasoned: "[t]he purpose of the doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves.").

### C.     The directors' legislative functions are protected, but their administrative functions are not.

The Fifth Circuit distinguishes between legitimate legislative functions, which are protected, and administrative functions, which are not. *Hughes v. Tarrant Cty. Texas*, 948 F.2d 918, 921 (5th Cir. 1991); *Bryan v. City of Madison*, 213 F.3d 267, 273 (5th Cir. 2000). But its guidance as to what qualifies as legislative versus administrative is "general" at best. *Bryan*, 213 F.3d at 273. It has selectively applied, without adopting, two related distinguishing tests. *Id.*

The first test provides: "[i]f the underlying facts on which the decision is based are 'legislative facts,' such as 'generalizations concerning a policy or state of affairs,' then the decision is legislative." *Id.* (quoting *Developments in the Law*, 91 HARV. L. REV. 1427, 1510–11 (1978)). The second provides: "[i]f the action involves establishment of a general policy, it is legislative; if the action single[s] out specific individuals and affect[s] them differently from others, it is administrative." *Bryan*, 213 F.3d at 273. Putting these tests together, an action is "legislative" when applicable to the general public and "administrative" when tailored to individuals.

The District asks this Court to "prevent the depositions of the District's Directors, or, in the alternative . . . prevent[] inquiry on the Directors' mental processes, reasoning, and rationales related to the District's rules, their adoption, permitting decisions, and decision to deny [Plaintiffs]

7

a variance." ECF No. 45 at 7. All functions except the variance denial were legislative because the rules applied to the general public, not to Plaintiffs in particular. *Bryan*, 213 F.3d at 273.

The variance denial, however, was administrative. Plaintiffs requested a variance from certain rules for alleged overproduction on certain GPUs, which the District's Board Order No. 023-001 denied on January 20, 2023. ECF Nos. 17 at 15–16; 39 at 3. The denial didn't alter or change policy, create a new one, or apply new rules to additional parties. It simply enforced the extant rules against Plaintiffs and only Plaintiffs. Once "this determination entered the realm of enforcement," *Bryan*, 213 F.3d at 273, the legislators' functions became administrative. Indeed, while the District requested protection for the denial, its briefing never argued that testimonial privilege is so broad. ECF No. 45 at 6. The Fifth Circuit is clear that it isn't. Hence, Plaintiffs may depose the directors on the January 20, 2023 denial order.

### CONCLUSION

For the reasons discussed *supra*, the District's Motion is **GRANTED IN PART**. Defendant's directors are therefore **SUBJECT** to deposition, but Plaintiffs are **RESTRICTED** from "inquiry on the Directors' mental processes, reasoning, and rationales related to the District's rules, their adoption, [and] permitting decisions." ECF No. 45 at 7. Plaintiffs are, however, **PERMITTED** to inquire after the District's January 20, 2023 "decision to deny [Plaintiffs] a variance." *Id.* This Order further **SUPERSEDES** and **ABROGATES** the Court's prior Order (ECF No. 50) pausing all deposition of directors.

**SO ORDERED**.

April **17**, 2024.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

8