IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| BLF LAND, LLC and BLAINE LARSEN FARMS, INC., | |
| Plaintiffs/Counter-Defendants, | |
| v. | 2:23-CV-133-Z |
| NORTH PLAINS GROUNDWATER CONSERVATION DISTRICT, | |
| Defendant/Counter-Plaintiff. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant/Counter-Plaintiff's ("NPGCD" or "District") Motion for Partial Summary Judgment on Counterclaims ("Motion"), filed January 31, 2025. ECF No. 77. Plaintiffs/Counter-Defendants ("BLF") responded on February 21, 2025. ECF No. 80. NPGCD replied on March 14, 2025. ECF No. 84. The Motion is now ripe. Having reviewed the Motion, briefing, and relevant law, the Motion is **DENIED**. The instant case is **DISMISSED without prejudice** for lack of jurisdiction.

### BACKGROUND

This dispute surrounds BLF Land, LLC and Blaine Larsen Farms, Inc.'s alleged over-production of groundwater beneath their land. As discussed in the Court's previous Opinion (ECF No. 67), BLF grows the majority of Texas potatoes, irrigating their crops using the groundwater beneath their land. ECF No. 57 at 4. NPGCD is a regulatory agency created by the Texas Legislature to conserve, protect, and preserve such groundwater resources within its jurisdiction and adopt rules to manage them. TEX. WATER CODE §§ 36.0015(b), 36.1071(f). NPGCD was commissioned to "protect [groundwater] property rights." *Id.* § 36.0015(b).

NPGCD has the power to regulate the spacing of water wells and groundwater production "to minimize as far as practicable the drawdown of the water table or the reduction of artesian pressure . . . [and] to prevent interference between wells." *Id.* § 36.116(a). Pursuant to this power, NPGCD has imposed regulations to prevent landowners from such "overpumping." ECF No. 57 at 8. These rules require landowners to divide their properties into smaller segments—Groundwater Production Units ("GPUs")—and restrict the amount of groundwater a landowner may produce in each portion. *See* NPGCD Rules (adopted Jan. 20, 2009), § 1.3 (defining "Allowable Annual Production").

BLF's groundwater production exceeded the production limit in certain portions from 2020 through 2022. ECF No. 55 at 6. On May 19, 2021, NPGCD notified BLF that they overproduced in 2020 and invoiced them for the violations. *Id.* at 547–52. On June 24, 2021, BLF requested a variance. ECF No. 58-2 at 271. In May of 2022, NPGCD again notified BLF of their overproduction violations for 2021. ECF Nos. 55 at 551–58; 58-2 at 242–70. On January 17, 2023, NPGCD's Board Order No. 023-001 denied BLF's 2021 variance request. ECF No. 55 at 561–67. In June 2023, NPGCD again notified BLF of their overproduction violations for 2022. ECF No. 58-3 at 2–10. After lengthy negotiations, on July 27, 2023, NPGCD demanded a $500,000 payment to resolve the alleged rule violations. *Id.* at 5. BLF refused and filed the instant suit. ECF No. 1. NPGCD asserted counterclaims in its answer to BLF's Amended Complaint. ECF No. 26.

On November 13, 2024, this Court granted NPGCD's Cross-Motion for Partial Summary Judgment and, conversely, denied BLF's Cross-Motion for Partial Summary Judgment. ECF No. 67. Thus, only NPGCD's counterclaims remain—the subject of NPGCD's instant Motion. ECF No. 77 ("The District seeks a ruling that BLF has violated the District's duly adopted rules, an award of civil penalties and injunctive relief under Chapter 36 of the

Texas Water Code, and a determination that BLF is liable for the District's attorney's fees and costs.").

### LEGAL STANDARD

Summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The movant meets its initial burden by showing that the "evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). Facts are considered "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In determining whether a genuine issue as to any material fact exists, [courts] must view the evidence in the light most favorable to the nonmoving party." *Fahim v. Marriot Hotel Servs., Inc.*, 551 F.3d 344, 348–49 (5th Cir. 2008).

"[Y]et the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (citations omitted). Further, "Rule 56 does not impose on the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992). Parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (citations omitted). "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451 (citing FED. R. CIV. P. 56(c)).

**ANALYSIS**

The Court's Opinion granting NPGCD's Cross-Motion for Partial Summary Judgment dismissed all of BLF's claims—including all federal claims. ECF No. 67 (finding that BLF failed to establish a *per se* or a regulatory taking claim, that BLF was afforded ample substantive and procedural due process, and that BLF failed to proffer sufficient summary-judgment evidence regarding their equal protection claim). All that remains in the instant case are state-law counterclaims: NPGCD's Motion for Partial Summary Judgment solely addresses civil penalties, injunctive relief, and attorneys' fees and costs. *See* ECF No. 78 at 10–11 ("[T]he District respectfully asks that the Court assess civil penalties against BLF, award injunctive relief in favor of the District . . . and determine that the District is entitled to its reasonable attorney fees and costs . . . .").

Federal district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States, and supplemental jurisdiction over all other claims so related that they form part of the same case or controversy. *See* 28 U.S.C. §§ 1331, 1367; ECF No. 26 at 5 ("The Court has subject matter jurisdiction over Counter-Plaintiffs' claims under 28 U.S.C. § 1367(a) because they are so related to BLF's claims that they form part of the same case or controversy under Article II [sic] of the United States Constitution."). However, it is within a district court's wide discretion to decline to exercise supplemental jurisdiction over state-law claims where the federal claims have been dismissed. 28 U.S.C. § 1367; *Holland v. GEXA Corp.*, 161 F. App'x 364, 366 (5th Cir. 2005). In fact, "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). This general rule applies with equal force to counterclaims. *See, e.g., Naranjo v. Nick's Mgmt., Inc.*, No. 3:21-CV-2883, 2022 WL 3139755, at *3 (N.D. Tex. Aug. 5, 2022) ("declin[ing] to exercise

supplemental jurisdiction over Defendants' counterclaims," even where permissible); *Charter Escrow Co., Inc. v. Threlkeld & Co. Ins. Agency*, No. 3-01-CV-1039, 2002 WL 32332547, at *3–4 (N.D. Tex. Nov. 7, 2002) ("The Court, therefore, declines to exercise supplemental jurisdiction over the Defendants' remaining state law counterclaims.").

In determining whether to decline an exercise of jurisdiction over the remaining state-law counterclaims here, the Court "considers the statutory factors set forth by 28 U.S.C. § 1367(c) and the common-law factors of judicial economy, convenience, fairness, and comity." *McConnell v. City of Fort Worth Firefighters'*, No. 4:15-CV-880, 2016 WL 6304806, at *1 (N.D. Tex. Jan. 15, 2016) (quoting *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 158–59 (5th Cir. 2011)). The statutory factors under subsection (c) provide that a district court may decline to exercise supplemental jurisdiction over a state-law claim if: "(1) the state claim raises a novel or complex issue of State law; (2) the claim substantially predominates over [the federal claims]; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

At least three subsections of the statutory remand factors, as well as several common-law factors, support this Court declining to exercise jurisdiction over the state-law counterclaims. First, subsection (c)(1) applies because NPGCD's counterclaims raise complex issues of state law. NPGCD dedicates nearly ten full pages to calculating the potential range of civil penalties sought against BLF under the Texas Water Code and NPGCD's own rules, complete with full-page charts and fulsome mathematical calculations. *See* ECF No. 78 at 12–20 (providing information such as, but not limited to, "the assigned number of the GPU violated, the number of acres within that GPU, the annual allowable production limit based upon the GPU's acreage, the total actual production from that GPU during the subject year, the calculated among of acre-feet exceeding the allowable production, and the percent over the

AAPL that the GPU's total production constitutes"). The determination of any civil penalties to be imposed in alignment with such numerous variables is the epitome of an issue properly suited for state-court expertise.

Further, it is unclear where jurisdiction is properly found: with NPGCD or with the Court. BLF argues that the "Texas Water Code only gives [NPGCD] the power to assess penalties, not a court." ECF No. 80 at 16. Conversely, NPGCD contends that "the Water Code provides no clear authority for [NPGCD] to independently assess penalties," arguing instead that the assessment of penalties "is precisely the role prescribed for courts." ECF No. 84 at 9, 11. The text of the Water Code fails to provide a clear answer, and the Court is unaware of any case law purporting to answer this issue of state law. But this much is clear: NPGCD is a regulatory agency created by the Texas Legislature, dealing here with particular provisions of the Texas Water Code—it logically follows that Texas state court is optimally suited to consider, interpret, and apply complex or vague Texas statutory provisions.

Second, subsections (c)(2) and (c)(3) apply, as all federal claims in the instant case have been dismissed by this Court's previous Opinion. ECF No. 67. As the Fifth Circuit routinely states, "[w]hen a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)). And NPGCD's state-law counterclaims inherently predominate, as NPGCD is no longer prosecuting a federal claim. *Marshall v. MarOpCo, Inc.*, 223 F. Supp. 3d 562, 573 (N.D. Tex. 2017) (citing *Kokes v. Angelina Coll.*, 220 F. Supp. 2d 661, 668 (E.D. Tex. 2002) ("[T]he court has dismissed all of the plaintiff's federal claims before trial and . . . as such, the state claims predominate in this case.")).

The common-law factors also support this Court's decision to decline an exercise of jurisdiction. Because no federal issues remain in this case, the interests of federalism and comity

favor determination by state court. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."). Further, litigating the cases in Texas state court is no more inconvenient or prejudicial to the parties than litigating the case in this Court. *Enochs*, 641 F.3d at 160. For these reasons, the Court declines to exercise jurisdiction over the pendant state-law counterclaims.

CONCLUSION

The Court **DENIES** NPGCD's Motion for Partial Summary Judgment on Counterclaims (ECF No. 77). This case is **DISMISSED without prejudice** for lack of jurisdiction. Should NPGCD seek to further pursue its state-law claims, it must do so in state court.

**SO ORDERED**.

May 23, 2025

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE